THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MADISON GOURLEY**<br><br>Plaintiff,<br><br>v.<br><br>**PHIILLIPS NORTH AMERICA, LLC**<br><br>Defendant. | Case No. |

### COMPLAINT

Plaintiff Madison Gourley ("Plaintiff") files this lawsuit against Phillips North America for discrimination and retaliation in violations of Title VII and the Americans with Disabilities Act.

### I.      Parties

1. Madison Gourley is a citizen of the United States, and a resident of the State of New Jersey and is over nineteen (19) years of age.

2. Phillips North America, LLC ("Phillips") is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," 42 U.S.C. § 2000e et seq., as amended by the "Civil Rights Act of 1991," and 42 U.S.C. § 1981a.

### II.      Jurisdiction and Venue

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(4), 2201 and 2202. This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," 42 U.S.C. Section 2000e et seq., as amended by the Civil Rights Act of 1991, and 42 U.S.C. Section 1981a.

I

Plaintiff's First Set of Interrogatories

4. The plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991," 42 U.S.C. § 2000e et seq. The plaintiff timely filed her charge of discrimination within 180 days of the occurrence of the last discriminatory act. The plaintiff timely filed her lawsuit within 90 days of the receipt of her right-to-sue letter from the EEOC.

### III. Facts

5. Plaintiff is a woman.

6. Plaintiff was hired as an inside sales representative for Phillips in October 2020.

7. When Phillips hired Gourley, she was hired to perform her jobs in an entirely remote manner due to the ongoing COVID-19 pandemic.

8. Plaintiff's geographic call area was Dallas and Austin Texas.

9. In June 2021, Gourley approached her front-line manager, Angelo Picucci ("Picucci") and informed him she had recently sold her home in Nashville and was relocating to Cleveland, Ohio.

10. About a week later, Picucci and Gourley met with Director of Sales Anissa Napier ("Napier") onsite at the Nashville location to discuss her employment options in light of her out-of-state move.

11. During the meeting Gourley was told she was doing a great job.

12. They told Gourley she had the greenlight.

13. Napier told Gourley "We are going to have to just fly under the radar and give you approval to continue working from Ohio."

Plaintiff's First Set of Interrogatories

14. They told Gourley they would handle presenting the issue.

15. Gourley left with a positive feeling.

16. During one-on-ones with Gourley Picucci would constantly tell Gourley "I always go to bat for my employees"

17. Neither said anything to Gourley indicating her employment would end or was that this arrangement was temporary.

18. Plaintiff continued working from Ohio as a remote employee.

19. During a phone call in September 2021, Plaintiff informed Picucci that she was pregnant with her first baby.

20. During a phone call, Plaintiff communicated to Picucci she was nervous with this being her first pregnancy, and she had heard pregnant women had issues when they told their employers, she wanted to continue working with Phillips.

21. Picucci listened, did not say congratulations, nor did he provide any information about what to do or expect.

22. Picucci told Plaintiff, "I gotta talk to Melissa."

23. Gourley asked Picucci if she could talk to Melissa, and Picucci repeated, "I gotta talk to Melissa" to end the conversation.

24. Picucci continued to be very short with Plaintiff and evasive.

25. Picucci surprised Gourley when he made mention in a team meeting that they were backfilling her role.

26. Concerned about what backfill meant and what that meant for her benefits Gourley began asking Picucci if she was being terminated or being forced to resign.

Plaintiff's First Set of Interrogatories

27. Picucci told Plaintiff, "I gotta talk to Melissa."

28. Plaintiff toldPicucci, "I need to stay with Phillips," and "I need to have health insurance for my baby, and me."

29. Picucci said, "We have a meeting with Melissa scheduled."

30. The meeting was convened on a Microsoft Teams video call.

31. During the video call Plaintiff asked about a reasonable accommodation.

32. During the video call, Melissa informed Gourley that she was going to be classified as a "voluntary resignation."

33. Gourley told Melissa that she was not voluntarily resigning and asked about a reasonable accommodation.

34. On October 28, 2021, Plaintiff was informed by her employer her remote working arrangement was terminated and that should be required to report to work 3 days a week.

35. HR Representative Melissa Bennie told Plaintiff that she [Plaintiff] would be voluntarily resigning from the position because she [Gourley] was not planning on reporting to work Monday, Wednesday, and Friday, or three times a week.

36. Plaintiff told HR Representative Melissa Bennie she was not voluntarily resigning from the position.

37. Plaintiff requested continuation of teleworking as a reasonable accommodation due to her pregnancy and COVID.

38. Gourley specifically stated she was at higher-risk for COVID because of her pregnancy.

39. Gourley also stated she had a doctor's note stating she was at high-risk for COVID because of her pregnancy.

4

Plaintiff's First Set of Interrogatories

40. HR Representative Melissa Bennie said Gourley had voluntarily resigned because she had moved out of state.

41. Plaintiff was told that pregnancy was not her own serious health condition or a disability.

42. Plaintiff told HR Representative Melissa Bennie that she was not told anything about a reasonable accommodation process after informing her managers she was pregnant.

43. Plaintiff asked about another job within the Phillips organization.

44. Phillips failed to engage in the interactive process.

45. Plaintiff was told all inside sales representatives were being required to return to the office.

46. Non-pregnant inside sale representatives were allowed to continue the remote work and were not terminated.

47. Non-pregnant inside sales representatives were allowed to continue the remote work out-of-state and were not terminated.

48. Non-pregnant inside sales representatives were allowed to continue the remote work out-of-state.

## IV.     Causes of Action

### Violations of Title VII and the Pregnancy Discrimination Act

49. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if set out in specific detail herein below.

50. Phillips terminated Plaintiff's employment because of or on the basis of pregnancy, childbirth, or related medical conditions.

51. Phillips terminated Plaintiff when Plaintiff was pregnant.

52. Phillips terminated Plaintiff when she was qualified for her job.

Plaintiff's First Set of Interrogatories

53. Phillips termination of Plaintiff was an adverse employment action.

54. Phillips terminated Plaintiff within 60 days of learning that she was pregnant.

55. Phillips terminated Plaintiff one day after she requested to work from home due to her pregnancy.

56. Phillips termination of Plaintiff was retaliatory.

57. Plaintiff engaged in protected activity when she requested a reasonable accommodation to work from home.

58. Phillips knew or should have known that Plaintiff was pregnant.

59. Phillips knew or should have known that Plaintiff requested to continue to work from home because of her pregnancy.

60. Phillips termination of Plaintiff was materially adverse to Plaintiff.

61. Phillips termination of Plaintiff was causally connected to her request to work from home due to her pregnancy.

62. Plaintiff's pregnancy was at least a motivating factor in Defendant's decision to terminate Plaintiff's employment.

63. Defendant terminated Plaintiff's employment under circumstances that could give rise to an inference of pregnancy discrimination. Defendant replaced Plaintiff with a non-pregnant individual.

64. The reasons Defendant has articulated for its termination of Plaintiff's employment are false and a pretext for pregnancy discrimination.

65. Plaintiff's claim is cognizable under a mixed motive framework, as even if Defendant had other legitimate or illegitimate reasons for terminating Plaintiff's employment, Plaintiff's

6

pregnancy remained at least a motivating factor in Defendant's decision to terminate her employment

66. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial and loss of wages, compensation and other benefits and conditions of employment.

67. Plaintiff incurred actual money expenses due Defendants acts and omissions.

68. Plaintiff seeks an award of an equal amount in liquidated damages.

69. Plaintiff has also suffered injury, including pain, humiliation, mental anguish and suffering.

70. Plaintiff seeks an award of reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by Defendant.

71. Plaintiff seeks all relief available under the law

### Violations of the Americans with Disabilities Act

72. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if set out in specific detail herein below.

73. Phillips engaged in unlawful employment practices with regard to Plaintiff in violation Title I of the ADA, 42 U.S.C. §12111(a) and (b) by:

    a. Discriminating and/or terminating Plaintiff on the basis of and/or arising out of her actual and/or perceived disability.

    b. Failing to initiate and engage in the interactive process to identify the precise limitations resulting from Plaintiff's disability and potential reasonable accommodations that could overcome those limitations.

    c. Failing to provide reasonable accommodations to Plaintiff.

Plaintiff's First Set of Interrogatories

d. Discharging Plaintiff, due to the need to accommodate Plaintiff's disability.

74. Plaintiff is a qualified individual with a disability and meets the requirements and can perform the essential functions of the team coordinator position with or without reasonable accommodation.

75. Defendant discriminated against Plaintiff by failing to engage in the reasonable accommodation process.

76. Plaintiff asserts that she was discriminated against and subjected to disparate treatment "because of her disability" and/or "on the basis of disability."

77. Defendant treated other employees who were not disabled better than Plaintiff by allowing them to work from home.

78. Plaintiff could have been reasonably accommodated but for the Defendant's lack of good faith.

79. Defendant terminated Plaintiff on the basis of her disability.

80. Plaintiff was otherwise qualified to perform the essential functions of her job with reasonable accommodation.

81. Defendant had actual knowledge of Plaintiff's disability being a condition related to pregnancy and the physical limitations and/or restrictions arising out/or of or resulting from the disability.

82. Plaintiff engaged in protected activity by requesting a reasonable accommodation related to her disabilities.

83. Plaintiff was terminated on a false pretext with Phillips claiming she voluntarily resigned.

Plaintiff's First Set of Interrogatories

84. This constitutes an adverse employment action and/or in the alternative an unlawful employment practice under the ADA.

85. The bases for termination proffered by Defendant are false and serve as a pretext for termination and therefore deserving no credence as a legitimate non-discriminatory act.

**Violations of the Family Medical Leave Act**

86. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if set out in specific detail herein below.

87. Defendant retaliated, interfered with, restrained the prospective exercise and the attempted exercise of Plaintiff's rights granted under the FMLA, including but not limited to

    a. Plaintiff's right to return to the position she held before her leave;

    b. Plaintiff's right to return to a position substantially equivalent following her leave;

    c. Plaintiff's receipt and continuation of compensation and other benefits during her leave.

88. Defendant retaliated and interfered with and restrained Plaintiff's prospective exercise of and attempted exercise of her rights under the Act, including intermittent leave, reduced schedule leave, continuation of benefits and other rights he would have received during his leave.

89. Defendant acts and omissions were willful violations of the FMLA.

90. Defendant's acts and omissions were not made in good faith effort to comply with FMLA.

Plaintiff's First Set of Interrogatories

91. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial and loss of wages, compensation and other benefits and conditions of employment.

92. Plaintiff incurred actual money expenses due Defendants acts and omissions.

93. Plaintiff seeks an award of an equal amount in liquidated damages.

94. Plaintiff has also suffered injury, including pain, humiliation, mental anguish and suffering.

95. Plaintiff seeks an award of reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by Defendant.

96. Plaintiff seeks all relief available under the law.

**V. Prayer for Relief**

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. The effect of the unlawful employment practices complained of herein has been to deprive the Plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of her disability. Such discrimination and/or retaliation practices were performed intentionally with malice and/or reckless indifference to the federally protected rights of Plaintiff.

2. Enter an Order requiring the defendant to make Plaintiff whole by awarding her:

   a. Reinstatement

   b. Loss of back wages;

   c. Loss of insurance benefits;

   d. Loss of other fringe benefits;

10

e. Loss of Future earnings and front-pay;

f. Loss of reputation;

g. Humiliation, embarrassment, and loss of self-esteem;

h. Punitive damages; and

i. Loss of time and money in endeavoring to protect her from Defendants' unlawful discrimination, including costs and reasonable attorneys' fee of this action.

3. Plaintiff has suffered damages as a result of Defendant's discriminatory actions in excess of $300,000.00.

4. Declaration that the Defendants violated Plaintiff's rights with regard to disability discrimination pursuant to the Family Medical Leave Act and/or Americans with Disabilities Act as referenced herein.

5. Compensatory damages with prejudgment and post judgment interest to Plaintiff for all salary, back pay, front pay, and benefits lost due to Defendants' unlawful actions in an amount not less than $300,000.00 or to be determined;

6. Liquidated damages;

7. Punitive damages to Plaintiff in an amount to be determined;

8. Award to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs, and expenses;

9. Plaintiff further prays for such other relief and benefits as the cause of justice may require as the Court deems just and proper; and

10. Jury trial with Cause to be tried by a jury of peers (12).

11

PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.

Respectfully submitted,

/s/Daniel Arciniegas

Daniel Arciniegas BPR
Arciniegas Law
1242 Old Hillsboro Road
Franklin, TN 37069
615-777-5339
daniel@arciniegaslaw.com

/s/David Weatherman

David Weatherman BPR 029446
The Weatherman Firm
1242 Old Hillsboro Road
Franklin, TN 37069
615-779-6344
david@theweathermanfirm.com

Plaintiff's First Set of Interrogatories